Good morning, Your Honors. May it please the Court, Deputy Attorney General Sean Maher for Respondent Appellant. Mr. Maher. I will be addressing the questions that this Court posed in its order regarding the possibility of a remand back to the District Court for an evidentiary hearing. I will be fully addressing that issue in support order, but I wanted to make one very quick point on the issue of Teague. The California Supreme Court was not compelled to adopt this Court's bright-line, timeliness rule as to FREDA because state courts are not bound by a Federal Circuit precedent, and FREDA itself does not compel their jury and panel to do so. With that said, I will turn to the issue of remand. It is our position that an evidentiary hearing in the District Court is not required in this case because all of the material facts necessary for an adjudication of the issue of delay in the FREDA context were adequately developed at the State Court hearing. As this Court has explained in Avila v. Rowe, the Court must examine the totality of the circumstances preceding the making of the FREDA motion in determining whether the motion was made for the purpose of delay. That factual inquiry occurred at the State hearing. In particular, extensive testimony was elicited concerning the communications between Petitioner and Trial Counsel in 1983 regarding the case and the defense strategy, the communications between Petitioner and the defense investigator in 1983 regarding the case. In addition, there was testimony regarding the nature of the relationship between Petitioner and Trial Counsel prior to the making of the first FREDA motion. So in the Frierson hearing, did the referee make any findings with respect to what Mr. Burton's motivation was in requesting permission to represent himself? Yes, Your Honor. In particular, in response to reference question number six, the referee specifically found, quote, Petitioner tried to delay the matter by seeking to represent himself, but those requests were denied. That is at excerpts of record at page 80. Okay. Just a minute. So page 80? Correct. Okay. Okay. And which paragraph? It's at the top of the page of page 80. Okay. Where it says, this statement suggests to this court that Petitioner was trying to delay his trial date. And Mr. Slick's failure to do so was a cause for Petitioner to be dissatisfied with Mr. Slick. Yeah. What does that tell us about trying to? It's not unusual for defense counsel to want to delay a trial date. They can do so for all kinds of reasons. He hasn't explained, but the referee hasn't made any findings as to what the motivation was. He may have wished to delay the trial date. Of course he did. He didn't believe that his counsel was offering the proper witnesses. He didn't think he was doing a good job. And he thought that there were still people that That's not an illegitimate purpose to request a delay. Yes, Your Honor. I may have perhaps Any more than it would be, counsel, if you asked this court for a two-week extension of time to file a brief. Yes, Your Honor. I understand that point. Perhaps I might have cited the wrong page, but the state referee did make a specific finding that Well, that's the reference. Your reference is exactly on. I mean, that is the page I've got. I've got page 80 open, and that is an answer to question number 6. And that appears to be directly on point. It just doesn't answer very much. It tells us something. It just doesn't tell us very much. Well, Your Honor, the evidence would support the finding that What evidence would you rely on primarily? Your Honor, the testimony of Mr. Schlick, the trial counsel, who testified at the reference hearing, that Mr. Burton, the petitioner, told him he was not ready for trial. When Mr. Schlick inquired further as to his explanations as to why he was not ready for trial, Mr. Burton was unable to provide any reasons. That was contained in Mr. Schlick's reference hearing testimony. And Mr. Schlick indicated this occurred on multiple occasions. There's also evidence at the reference hearing that, in particular, the investigators' reference hearing testimony, the defense investigators' reference hearing testimony, that the petitioner expressed to her that the trial was rushing forward, and that he was not ready for trial. In California, this is actually pretty fast work, wasn't it? From the date of the crime to the date of the trial in a death penalty case, this was pretty efficient, wasn't it? Was it like five and a half months? Correct. That is the chronology. I don't have sufficient experience to know how quickly the capital trial would have gone, would have proceeded back in 1983. However, I think partially the speed of the trial, to the extent that it was proceeding quickly to trial, was that there was not a great deal of witnesses or evidence in the prosecution case. In particular, it was a relatively simple case, and that, therefore, there was not that additional time was not necessary to defend against the capital charges in this case. Turning back to the point that an evidentiary hearing is not required, there certainly was conflicting evidence that was presented at the reference hearing concerning the communications between trial counsel and Mr. Burton. The state court referee had the opportunity to view these witnesses firsthand, assessed conflicting evidence, sifted through the conflicting evidence, assessed the demeanor of the witnesses, and concluded that trial counsel was credible, whereas the testimony of Mr. Burton and the defense investigator were not credible. Is this a finding of fact to which we must defer, or is there a mixed question of law and fact to be considered here? Well, Your Honor, as to the underlying question of witness credibility and demeanor, the Supreme to assess demeanor and credibility on the basis of the cold record, that is, in these particular circumstances where a state court, having viewed these witnesses firsthand and is able to assess their demeanor on the stand, it is those factual findings which are entitled to special deference. So what precisely is the testimony from the attorney that you rely upon to say that there was delay, that the purpose was delay? Yes, Your Honor, it was Mr. Slick's testimony that Mr. Burton told him that he was not ready to proceed to trial, and that when Mr. Slick... Does that necessarily mean that the continuance was for the purpose of delay rather than the purpose of being prepared? No, it does not necessarily mean as such, but it certainly is supportive of a finding that the purpose and motivation of the Frederick motion was for delay. It certainly is a circumstance in support of that finding by the state court. Okay, so the statement that he was told by his client that he wasn't ready to go to trial, what was the other testimony from the attorney that you think lends credence to the state court decision? There was also additional testimony from Mr. Slick at the reference hearing that he believed Mr. Burton, like many other capital defendants, was not emotionally ready to proceed to trial. And again, his assessment was consistent with other capital defendants he represented, which further supported the inference that the Frederick motion was made for the purpose of delay. In addition, there was other evidence, as I indicated. The defense investigator testified that Mr. Burton had told her that he felt the case was rushing forward and it was proceeding too quickly. That was in the context of the investigator saying there was additional investigation to be done. There were other witnesses who needed to be interviewed and other evidence that needed to be gathered. So is that consistent with a purpose of delay? I wouldn't necessarily say it's dispositive, but I believe it is supportive of a finding that the Frederick motion was made for the purpose of delay. In addition, coupled with the other objective circumstances, which is that the first Frederick motion was made on August 10th, which was the day that the case was sent out to the trial department, the record fully supports the conclusion that Mr. Burton had an opportunity to request self-representation at an earlier date. He may have, counsel, if he had been bound and determined that he was going to represent himself no matter what. But there's another view of this, which is that as fast as this thing was moving, again, five and a half months from the date of the crime to the date of a capital case, that this is a bit of a moving target and that Burton is talking to the investigator and realizing the closer they get to the trial date that she hasn't completed her work and that his counsel, in his view, hasn't done his job. And until he gets to the final date, he may not have any idea what the extent of that problem is. So the fact that he didn't request it because he had an opportunity at an earlier date suggests that he was pretty smart and that he thought that he probably did need counsel if he had counsel who was doing what he thought needed to be done. It's not until he gets to the trial date that he realizes everything's gone wrong. Now, that's his perspective. Certainly. That very well could be his perspective. But what would be wrong with that argument? Well, again, at this hearing by July 26, the court presiding over the hearing clearly indicated that the trial would be commencing within a very short period of time. In addition, the testimony at the reference hearing from Mr. Slick was that Mr. Slick had communicated his defense strategy to Petitioner prior to trial and that Petitioner had not objected to the trial strategy. But he didn't tell us what that strategy was, did he? I'm sorry? Mr. Slick didn't tell us. In fact, he was quite clear to the judge that he wasn't going to disclose what his strategy was. So he said, I've communicated my strategy. We have no idea what he told him. Not at the in-court proceeding in 1983, certainly, because he certainly didn't want to divulge his trial strategy in open court. However, the testimony at the reference hearing 20 years later. Yeah, 20 years later. Yes, Your Honor, was that he did advise his client prior to trial that his trial strategy was that he would not present an affirmative guilt-based defense in order to preserve the viability of a penalty-based defense, in order to preserve his credibility at the penalty-based defense. And again, Mr. Slick testified at the reference hearing, and this testimony was credited by the state court referee and ultimately adopted by the California Supreme Court, that Petitioner did not object to Mr. Slick's advice and guidance as to. . . Even assuming that what Mr. Slick said was correct and that that was a viable strategy, that really would only go to the Frierson question, which was the focus of the referee's inquiry. Even if Mr. Burton agreed with counsel's strategy, that he ought to preserve his credibility and not challenge the witnesses, he would still be entitled to represent himself. And that's the nature of a Feretta question, which is not the question that was before the referee. So what do we do with that? Your Honor, certainly the legal inquiry is different, because the legal standards are different for a Frierson claim versus a Feretta claim. However, it was Petitioner who injected the issue of Feretta into the Frierson context. It was Petitioner who alleged in the state. . . Petitioner who raised Feretta explicitly before the trial court in 1983. So you didn't raise it as a haphazard afterthought in 2004 at the referee's hearing. No, Your Honor, I understand that. But it was Petitioner who cited the Feretta motions as evidence that he intended or wished to present a guilt-based defense. So the issue of Feretta and Frierson were factually intertwined and factually joined by the allegations set forth in the state habeas petition, which were set forth in the reference questions submitted by the California Supreme Court for an evidentiary hearing to be held on. I see that I have very limited time remaining, and I would. . . Thank you, Counsel. Thank you, Your Honor. May it please the Court, I am Marsha Morrissey. Ms. Morrissey. Bruce Romo, and I represent Petitioner. Ms. Morrissey, before you get started, this is a death penalty case, but we are not the panel that's going to be the final dispositive panel on this. Would you remind us where this case sits in the larger picture? In the larger picture, Your Honor, we filed a petition in the district court. We then went back to the state court on an Atkins issue. About four years into waiting for the state court to do something on the Atkins issue, we went to federal court, and the parties agreed that if we could litigate the Feretta claim, it would be dispositive. So we briefed the Feretta claim. It was fully briefed, and then it sat. It wasn't decided. Just before Judge Matz retired, he issued an order granting relief. And the relief granted was an evidentiary hearing? No, the evidentiary hearing. In state court, we had an evidentiary hearing on the Frierson claim. After that hearing, we went up to the California Supreme Court. Then we went back to federal court, where this is a pre-ADPA case. So that we have, right now, a petition raising many claims pending in federal court. All right, but no action on those remaining claims. The only disposition by Judge Matz was to rule on the Feretta issue. Yes, Your Honor. Okay, and so, all right. The only issue in front of us, then, is the Feretta issue. The Feretta issue, yes. Very well, thank you. Your Honors, Mr. Burton made two unequivocal and timely requests to represent himself before the start of his capital trial. The district court found, and the respondent agrees, that if the motions made on August 10th and August 11th, that they were made before a jury in Panama and they are timely, under Fritz v. Spalding and Moore v. Calderon and other cases of this court, Mr. Burton is entitled to relief unless the record affirmatively shows that they were made for the purpose of delay. And the district court found, in a well-reasoned opinion, that there is no evidence of dilatory intent in this case. Counsel, how old is this case? This case is 31 years old. So, as a practical matter, if the decision of the district court stands, the state would have to retry a 31 year old case? Yes, the state would have to retry a 31 year old case. But, Your Honor, I would point out, and Judge Matz found in his opinion, that much of the delay in this case has been the state courts. So, in some sense, it's fitting that they bear the burden of the delay. We agree that there's no need for a remand for a factual hearing on intent to delay. We don't believe it would be instructive. The memories were fading when we had the evidentiary hearing 20 years after the fact. They wouldn't get any better 31 years after the fact. We would be prejudiced, we believe. Christina Kleinbauer, who is the investigator, was diagnosed with Alzheimer's six months before she testified at the state evidentiary hearing. And I don't expect she's any better now. And we believe that the trial record and the record before Judge Matz supports his ruling. This is not Fritz v. Balding or Aveo v. Rowe where the district court applied an incorrect analysis and the evidence was not clear on intent. In Fritz, there was pretty substantial evidence that the defendant delayed, he substituted counsel, he fought extradition. We don't have that here. So I don't think a remand is appropriate. The facts have been developed. In the trial court, the sole ground for the denial was that this motion wasn't timely. There was no finding the petitioner was moving with dilatory intent. The prosecution didn't object. The prosecution didn't claim prejudice to their case. Both the court and the prosecution clearly recognized that this motion was based on dissatisfaction with counsel. The direct appeal in 1989, the California Supreme Court rejected this circuit's rule for the timeliness of Furedema motions and said we're following our own law. It did not suggest that there was any purpose of delay. There was no mention of bad faith. It was just solely a timeliness issue. Dilatory intent, which is what respondent now urges, is a hypothetical justification not relied on by the trial court. And I think in the Fureda context in Hirschfield v. Payne, this court noted that you can't deny habeas relief based on a hypothetical justification not actually relied on by the trial court. Respondent's argument is based on determinations in a state court hearing 20 years after trial on a different legal claim. And he says based on that hearing, the Fureda motion was made solely to delay trial. That argument and the state court finding is based on Mr. Slick's impression of what his client wanted 20 years after the fact at a hearing where he remembered little else. Judge Bybee correctly said the court, the superior court said petitioner tried to delay the matter by seeking to represent himself, but those requests were denied. Well, the question for Fureda is why he sought to represent himself. The question is did he do so with dilatory intent and his lack of dilatory intent. Well, now we're here on an appeal brought by the state from the grant of a petition for habeas corpus in a state process which has gone through many, many steps. I gather the most recent state court decision that is in front of us is the 2006 Supreme Court decision. Is that your understanding? Yes, that's the most recent Supreme Court decision. Well, you know, our AEDPA deference rules, as we've been reminded by the Supreme Court many times, require that we have to defer to the findings of fact made by the state court. Why shouldn't we do that here? Because, Your Honor, AEDPA does not apply to this case. Why? Mr. Burton's federal petition was filed before AEDPA. This is an old case. We went back to exhaust in state court and were there for quite a long time. But even pre-AEDPA, don't we have an obligation to defer to findings by the state court? You have an obligation to conduct a de novo review to see if those findings are fairly supported by the evidence. They are not. The state court findings are not fairly supported by the evidence. The evidence is overwhelmingly to the contrary. What's the controlling case, then, with respect to the pre-AEDPA standard? The pre-AEDPA standard would be Lambright v. Schrierow, 490 Fed 3rd, 1109, 1114. Because this is a pre-AEDPA case, we do not review state court's legal conclusions to determine whether they are objectively reasonable. Rather, we simply resolve the legal issues on the merits under the ordinary rules. And, again, this is- And the ordinary rules are what? The ordinary rules are former 2254 presumption of correctness unless they're not entitled to a presumption of correctness. So we don't have any of the binding. I mean, there is really essentially nothing to defer to. This is under pre-AEDPA law. It's- Right, but don't we still have a- isn't there still a presumption of correctness resting with the state courts? There is a presumption of correctness, but only if it is not clearly erroneous. I mean, the facts have to be fairly supported by the record, and I think that's the key here. These factual findings are not fairly supported by the record. Mr. Burton's own actions before he moved to represent himself- He wrote a letter to Mr. Slick, which is at SER 33-36, telling him he wasn't involved. He wanted to defend. He wanted to work with Mr. Slick to fight for his freedom. His statements to investigator Kleinbauer- He wasn't ready for trial because the investigation wasn't complete. He was dissatisfied with Mr. Slick because he had little contact with his counsel, and that's at SER 194-195. His statements during his Ferretta motions, Your Honors, are clearly consistent with a desire to defend. He said the investigation wasn't complete. He said, I just got my report. The investigation was incomplete. I want to investigate my case. If I represent myself, I can and will show that I didn't commit these crimes. To read petitioner's statements as a state court did, as reflecting only a desire to delay the trial, unrelated to the quality of representation that Mr. Slick was providing, is objectively unreasonable. It is undisputed that Mr. Burton said he wasn't involved in the crime. There is no dispute that he provided Kleinbauer the names of witnesses, and that she contacted those witnesses who could have provided an alibi for Mr. Burton. There's no question that there are questions, discrepancies, and weaknesses in the eyewitness identification evidence, such as Mr. Burton having had two pictures of him in one photo lineup. There is no question but that Mr. Slick had little contact with his client. It is undisputed the investigator hadn't finished her work. She testified she was surprised to hear the trial started because she had not done what she needed to do. She hadn't interviewed three potential alibi witnesses. She hadn't done any background investigation on Andre Burton, which we know is required in a capital case. This is a capital case that started without any investigation regarding the client's life and what he had been through. And we know, Your Honors, that Mr. Slick was not interested in this case. He thought it was a slam dunk in guilt phase. His client said he didn't confess, and Mr. Slick, based on his relationship with the detectives, believed they were reliable and truthful, and that it was ludicrous to even think to the contrary. So that wasn't investigated, and he had a duty to do that. There was no history of delaying tactics by Mr. Burton. This was a freight train in terms of capital cases. I practiced in L.A. Superior Court at this time, and I did capital cases, and it was unheard of that a case went this quickly, only Mr. Slick's cases. But as judgment is properly found, there is no dilatory purpose found in the record. Rather, the record supports the conclusion that Mr. Burton made his Feretta Motions in good faith. And the state court finding to the contrary, that there was the motion to be made solely for the purpose of delay, is not entitled to the presumption of correctness because it is not fairly supported by the record. This court's determination of whether a Feretta Motion is made with dilatory intent, we believe is a mixed question of law and fact, which is subject to de novo review. Counsel, when was the Feretta Claim first presented in this 31-year history? It was presented on the direct appeal. On the direct appeal, which would have been about 1985, 86, something in there? Yeah, that's correct. And it was presented, and it was dismissed not because there was any purpose of delay, but simply because California requires that it be done within a reasonable time prior to trial. And their interpretation is based on- On the time in this, okay. Right, right. The determination is that the court must make is an analysis of the factors initiated in Fritz v. Spalding. Prejudice to the prosecution from the delay. Could the motion have reasonably been made earlier? Whether defendant could reasonably have been expected to- I'm sorry, are the events preceding the motion consistent with a good faith? I will briefly take issue with respondent's argument that Mr. Burton could have made his motion on July 26th. I think in this case, this case is very similar to Moore in some senses because in Moore, the defendant was in the master calendar court two times, and he was never brought into the courtroom. This was a Long Beach case. And Mr. Slick testified that on the days that the matter was called in the master calendar, it was the practice in Long Beach not to have the defendants in the courtroom. So while there is some- While there is a checkmark in the clerk's transcript of the July 26th proceeding next to Mr. Burton's name, we believe that the testimony of Slick and the practice in Long Beach was that he was not present in the courtroom on the 26th. He was in the courthouse but not present in the courtroom. And we believe that he could not have first made this motion until he did it, which was 12-220 in the afternoon after the case left the master calendar and was called for the first time in the trial court. Thank you, Counsel. Your time has expired. Thank you. Thank you, Your Honor. May I say just one thing? Mr. Burton has waited 31 years. He's been on death row since he was 20. He has never had a chance to present his defense to a jury, and that's what we'd like to do for him. Very well. Thank you, Counsel. Mr. Marr, you have a little time left. Yes, Your Honors. I wanted to make two very quick points. The correct standard in determining factual findings in a preedit case is set forth in former 2254D. Petitioner is attacking 2254D-8 specifically, attacking the state court finding on the basis that it is not fairly supported by the record. It is our position that the state court finding is fairly supported by the record. Certainly there is conflicting evidence. Yeah, but what's the authority you're relying on, the old 2254D? It is old 2254D-8. D-8. Correct. That is actually the exception that is being cited by Petitioner in attacking the state court findings. Okay. And do you agree with her about the Lampright case?  All right. We have a motion, 449 U.S. 539, which basically sets forth the codified exceptions to the presumption of credence. All right. Turning to, if I could give a slightly better answer to Judge Bidey's question regarding the factual linkage between the Frierson claim and the Feretta claim, Mr. Burton testified that the reason for his Feretta motion was his desire to present an alibi defense. The state court, therefore, was required to assess the veracity and truth of Mr. Burton's testimony of that particular issue. Therefore, the issue of Mr. Burton's actual motivation for making his Feretta motion was fully at issue at the state court hearing. All right. Thank you, counsel. The case just argued will be submitted for decision, and the court will adjourn.
judges: O'SCANNLAIN, RAWLINSON, BYBEE